NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHSMART BENEFIT SOLUTIONS, INC., et al.,<br><br>Defendants. | Civil Action No. 23-3791 (RK) (JBD)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Defendants HealthSmart, HealthSmart Benefit Solutions, Inc., HealthSmart Benefits Management, LLCs, and HealthSmart Holdings II, LLC's (together "HealthSmart" or "Defendants") Motion to Dismiss the Amended Complaint brought by Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics ("Abira" or "Plaintiff"). (ECF Nos. 41; 41-2, "Def. Mot.") Plaintiff opposed the Motion (ECF No. 42, "Pl. Opp."), and Defendants replied (ECF No. 43, "Pl. Rep."). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion is **GRANTED.**

I.   **BACKGROUND**

This case is one in a series of dozens of cases in this District brought by Plaintiff against various insurers, alleging non-payment for medical laboratory services rendered. Plaintiff claims to be a business that "performed clinical laboratory, toxicology, pharmacy, genetics, and addiction rehabilitation testing services." (ECF No. 8, "Am. Compl." ¶ 31.) Plaintiff bases its claims on the

existence of "insurance contracts" between "insurance companies and the[ir] insureds/claimants" that "require the Defendants to pay for laboratory testing of the insured/claimants' specimen." (*Id.* ¶ 37.) According to Plaintiff, the relationship between Plaintiff, the insureds, and Defendants would generally proceed as follows: first, at a doctor's office or other local facility, the insureds would "submit[] specimen," such as molecular swabs or blood samples, that would then be shipped to Plaintiff's laboratory. (*Id.* ¶ 38(i).) Since the relevant "insurance contracts" included "Benefits clauses or provisions requiring Defendants to pay for the laboratory testing" of specimen, the insured would "provide[] their insurance information to" Plaintiff, so that Plaintiff could collect payment from Defendants. (*Id.* ¶ 38(ii).) After that, the laboratory would test the specimen, provide the results to the appropriate recipient, and submit the bill, "typically called a claim," to Defendants for payment. (*Id.* ¶ 38(iii).)

Plaintiff's primary contention is that, contrary to the above process, Defendant never paid for any tests. (*Id.* ¶ 44(v).) In total, Plaintiff alleges that Defendant owes $58,774 for unpaid laboratory testing charges incurred by their insured customers. (*Id.* ¶ 60.)

Not only does Plaintiff allege that it was denied payment owed via contract, it alleges that Defendants induced it to continue providing testing under the false promise that the claims would not be denied and payment would be forthcoming. (*See id.* ¶ 45.) In particular, in cursory fashion, the Amended Complaint recounts that "Defendants' representatives ('Chelsea D.,' 'Adrn. P.', and 'Brady') communicated with Abira's representatives at the end of 2019 and in early 2020; they did not deny eligibility of the claims, thus creating the impression that payment would be forthcoming." (*Id.*) According to Plaintiff, this "impression" was not accidental, as "Defendants intended to watch Abira's claims grow, knowing that they would later refuse to pay Abira for a substantial amount of the outstanding claims." (*Id.* ¶ 45(ii); *see also id.* ¶ 68 (Defendants

2

"impressed upon Abira that Defendants would pay Abira for the lab testing services to Defendants' insureds/claimants"); ¶ 84 (describing "the impression that Defendants would pay Abira for performing testing services to Defendants' insureds/claimants").)

Some key facts are absent from the operative pleading. Although the Amended Complaint alleges non-payment pursuant to a variety of "insurance contracts" and claimants, Plaintiff does not identify any of the insureds/claimants or how many are involved in this case, and does not identify, append, quote, or cite any insurance contract. Plaintiff, contradicting itself, also alleges two separate bases for privity with the (unidentified) insurance contracts: first, as an "assignee of the insurance contracts, as evidenced by [claimants] providing their insurance information to Abira," (*id.* ¶ 39), and second, as an "authorized representative . . . pursuant to 29 C.F.R. § 2560.503-1(b)(4)" (*id.* ¶ 49(iv)).

Plaintiff asserts nine causes of action against Defendants and other unidentified affiliates and unnamed companies and individuals: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Fraudulent Misrepresentation; (4) Negligent Misrepresentation; (5) Promissory Estoppel; (6) Equitable Estoppel; (7) Quantum Meruit and Unjust Enrichment; (8) Violation of the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, Economic Security ("CARES") Act; and (9) Violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2, under which Plaintiff seeks treble damages for a total of $176,322. (*Id.* ¶¶ 51–120.)

On July 14, 2023, Defendants removed the case to this Court from the Superior Court of New Jersey, Mercer County, Law Division, based on diversity jurisdiction pursuant to 28 U.S.C.

§ 1332. (ECF No.1.) Plaintiff filed an Amended Complaint on August 31, 2023. (*See* Am. Compl.) On December 2, 2024, Defendants filed their Motion to Dismiss. (*See* ECF No. 41.)[1]

In the nearly fourteen months that elapsed between Plaintiff's filing of the Amended Complaint and Defendants' filing of the Motion to Dismiss, the parties exchanged documents informally to try to ascertain the identities of the various insureds who allegedly received laboratory testing from Plaintiff. (*See* Def. Mot. at 6.)[2] Plaintiff purportedly sent Defendants a spreadsheet that identified some information about the claims in dispute, including "the member names, dates of service, and billed amount" but was only able to provide four "claim numbers" out of 50 insureds. (*Id.* (citing ECF No. 41-3, "Ex. 1").) Using the four identified claim numbers, Defendants located the corresponding insurance plan documents and appended short excerpts from three of them to their Motion. (*See* ECF No. 41-3.) According to Defendants, "[a] review of the plans of insurance implicated by the 4 Matched Claims reveals that 3 of the 4 involved members [] were enrollees of ERISA governed health benefits plans . . . and that 2 of the 4 plans at issue in

---

[1] On August 15, 2024, this case was reassigned to the Undersigned. (ECF No. 30.)

[2] Plaintiff and Defendants both attached exhibits to their briefs that are extraneous to the pleadings. (*See* ECF Nos. 41-3, 42-1.) Defendants attached a spreadsheet of potential claimants and three excerpts of healthcare plan documents. (ECF Nos. 41-3.) Plaintiff attached screenshots of various medical forms. (ECF No. 42-1.) "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that 'a document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

Although neither Plaintiff nor Defendants object to the Court's consideration of any appended exhibit, and, indeed, routinely cite and refer to the exhibits throughout their briefing, the Court finds that it may rely only on copies of the ERISA plan documents produced by Defendants because those documents are integral to the Amended Complaint and no party disputes their authenticity. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."). The description of the spreadsheet above is meant only to provide context as to the parties' interactions leading up to the pending Motion, but will not be considered for the purposes of deciding the subject Motion.

4

those Claims contain 'No Assignments' provisions that explicitly prohibit members from assigning their claims to providers like Abira." (Def. Mot. at 6.)

## II. LEGAL STANDARD

For a complaint to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" may be disregarded. *Id.* at 679; *see also Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

Although Plaintiff originally brought nine claims under state law, Plaintiff has expressed a willingness to "accept a dismissal without prejudice" as to six of those claims. (Pl. Opp. at 2 n.1 ("Plaintiff is willing to accept a dismissal without prejudice concerning Count 8 of the Complaint as recently issued opinions have found no private right of action in several jurisdictions.")[3]; *id.* at 2 n.2 ("Plaintiff is willing to accept a dismissal without prejudice concerning Counts 3 through 6

---

[3] As to Count 8, Plaintiff asserts, and the Court agrees, that neither FFCRA nor the CARES Act create a private cause of action against an insurer. *See Genesis Lab'y Mgmt. LLC v. United Health Grp., Inc.*, No. 21-12057, 2023 WL 2387400, at *3 (D.N.J. Mar. 6, 2023) ("The Court, in line with its sister courts, finds that Plaintiff has no implied private right of action under the FFCRA and the CARES Act.").

and 9, with the right to amend."). The Court construes this "willingness" as a voluntary dismissal and will not address the viability of these six claims. Accordingly, the Court dismisses claims 3, 4, 5, 6, 8, and 9 without prejudice.

The Court will now address Defendants' arguments for preemption and failure state a claim regarding Plaintiff's three remaining causes of action—Counts 1, 2, and 7.

### A. ERISA PREEMPTION

The parties disagree as to the application of the Employee Retirement Income Security Act of 1974 ("ERISA") to this case. ERISA, a federal law that governs, *inter alia*, employer-sponsored healthcare plans, includes "a broad express preemption provision, which 'supersede[s] any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020) (emphasis added) (citing 29 U.S.C. § 1144(a)). This provision has the effect of superseding "not only state statutes, but also common law causes of action," when those state laws come within ERISA's orbit. *Id.* (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014)). Here, Plaintiff has not alleged a single cause of action under ERISA—all of the claims alleged are either state law claims or claims under FFRCA and the CARES Act. (*See* Am. Compl.) Accordingly, if any of Plaintiff's claims are subject to ERISA's preemption statute, then the state law claims alleged cannot redress the purported injury. If any of Plaintiff's allegations are *not* subject to ERISA's preemption statute, then the Court will proceed to analyze those claims under the relevant state law as alleged in the Amended Complaint.

A state law "relates to" an employee benefit plan "if it has either (1) a 'reference to' or (2) a 'connection with' that plan. *Plastic Surgery Ctr.*, 967 F.3d at 226 (citing *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 96–97 (1983)). "The first applies where a State's law acts immediately or

exclusively upon ERISA plans, or where the existence of ERISA plans is essential to the law's operation." *Id.* (cleaned up). In other words, a claim "relates to" ERISA when it is "premised on the existence of the plan and require[s] interpreting the plan's terms." *Menkes*, 762 F.3d at 294. The question, then, is whether Plaintiff's claims are "premised on the existence" of an ERISA plan and require the Court to "interpret[] the plan's terms." *Id.*

Defendants contend that "all of Plaintiff's state law causes of action are expressly preempted" by ERISA "to the extent they 'relate to,' have a 'connection with,' or require this Court's 'reference to' the terms and conditions of plans of insurance subject to ERISA." (Def. Mot. at 18.) Defendants point to Plaintiff's consistent allegations that HealthSmart was obligated to pay for services as set forth in various "insurance contracts." (*Id.*) At least some of these alleged contracts, Defendants argue, are health plans governed by ERISA, and therefore claims related to those contracts are "premised on" the existence of an ERISA plan. (*Id.*)

Plaintiff argues the opposite—that *none* of the allegations "relate to" any ERISA plan, (Pl. Opp. at 13)—but advances a series of contradictory arguments and allegations in support. For example, Plaintiff argues that "the Complaint does not claim that Plaintiff was a contracting party to any ERISA plan," (*id.*), but also asserts that Plaintiff was either an "assignee" of the alleged insurance contract or an "authorized representative" of a claimant pursuant to 29 C.F.R. § 2560.503-1(b)(4), an ERISA regulation. (*See, e.g.*, Am. Compl. ¶ 4, 39.) Plaintiff's entire theory rests on its ability to "stand[] . . . in the shoes" of insureds who *are* parties to insurance contracts, including, potentially, ERISA plans. (Pl. Opp. at 9.) As another example, Plaintiff argues that its claims could not possibly be subject to ERISA because Section 502(a) of ERISA allows only a "participant or beneficiary" to bring a civil action, and Plaintiff is neither, (Pl. Opp. at 15), but the Amended Complaint purports to bring claims "to the extent that insurance contracts relevant to the

claims underlying this action are governed by ERISA, pursuant to § 502(a)(1)(B) of ERISA." (Am. Compl. ¶ 3.) Here, Plaintiff inconsistently seeks it both ways—trying to assert the right to sue Defendants as an "authorized representative" pursuant to various "insurance contracts," (and citing ERISA in furtherance of both), but simultaneously eschewing any connection between its claims and the ERISA statute. These arguments are uncompelling.

The Court's decision is also informed by the fruits of a document exchange between the parties, as appended to Defendants' brief.[4] Defendants produced to Plaintiff—and now to the Court—excerpts from three plan documents that purportedly correspond to claimants identified by the parties. (ECF No. *Id.* ¶¶ 5–6.) Two of the three benefit plan documents include the following language: "This is a self-funded benefit plan coming within the purview of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plan is funded with Employee and/or Employer Contributions. As such, when applicable, Federal Law and jurisdiction preempt State law and jurisdiction." (*Id.* at 10, 16.) The third plan contains a page explaining the insured's rights under ERISA. (*Id.* at 19.) Plaintiff does not contest that these plans are subject to ERISA.

For the claimants covered by these plan documents, the Court finds that ERISA preempts any state law claims that "relate to" their ERISA-governed plans. Plaintiff alleges that it is owed payment pursuant to "insurance contracts" between "the insurance companies and the insureds/claimants," (*see, e.g.*, Am. Compl. ¶¶ 37, 38(ii)), not a "separate agreement" external to the plan. *See Plastic Surgery Ctr.*, 967 F.3d at 231–32 (holding breach of contract claims are not preempted by ERISA when the complaint alleged a separate agreement between plaintiff and defendant that defined the benefits owed). Plaintiff has not alleged that it entered into *any* agreement with Defendants directly, let alone an agreement outside of the plan covered by ERISA.

---

[4] *See supra* n. 3.

Accordingly, for the Court to decide whether Plaintiff is owed any payment as to these three insureds, it would need to analyze the language of the plan itself (including any out-of-network reimbursement policies). Therefore, these claims are "premised on the existence of the plan." *See Menkes*, 762 F.3d at 294; (*see also* Pl. Opp. at 16 ("Further analysis of the health plan documents must be performed in order to ensure standing by Plaintiff under assignments provided.").) This determination is buoyed by the fact that Plaintiff expressly alleges that it has a contractual right under 29 C.F.R. § 2560.503-1(b)(4), an ERISA regulation.[5]

The Court will not go so far as to find that *all* of Plaintiff's claims are preempted by ERISA. By Defendants' own admission, neither Plaintiff nor Defendants can ascertain whether all insureds were insured by an ERISA plan. (Def. Mot. at 7, 19.) Plaintiff's claims regarding any remaining insureds might not implicate or relate to ERISA at all. Accordingly, Counts 1, 2, and 7 against the three insureds subject to ERISA plans are preempted, and therefore dismissed.[6]

### B. STATE LAW CLAIMS

Having disposed of the few possible insureds that are pre-empted by ERISA, the Court turns to the sufficiency of Plaintiff's three remaining state law claims.

---

[5] Although Plaintiff routinely references this ERISA regulation in its pleadings, the regulation appears inapplicable to this case because it is "limited to internal appeals," not civil actions. *See Prestige Inst. for Plastic Surgery, P.C. o/b/o S.A. v. Horizon Blue Cross Blue Shield of New Jersey*, No. 20-3733, 2021 WL 4206323, at *3 (D.N.J. Sept. 16, 2021).

[6] Defendants also argue that Plaintiff lacks standing to bring claims as to two of the insureds, as their applicable health plans contain non-assignment provisions. Having found that ERISA preempts the remaining claims altogether, and Plaintiff has alleged no ERISA causes of action, the Court need not address the standing issue at this time. Furthermore, unlike a typical standing inquiry, which implicates the Court's jurisdiction, a challenge to derivative standing under ERISA "involves a merits-based determination" that is non-jurisdictional and therefore "properly filed under Rule 12(b)(6)," not Rule 12(b)(1). *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015).

### 1. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing (Counts 1 and 2)

Defendants argue that Counts 1 and 2 should be dismissed "[b]ecause Plaintiff fails to plead the existence of any contract between Plaintiff and HealthSmart and fails to identify the specific provisions allegedly breached." (Pl. Mot. at 20.) Plaintiff's response relies on the purported "assignment" by the insureds and argues that Plaintiff sufficiently "alleged that the insurance contracts have benefits claims where Defendants are ordered to pay for laboratory testing services." (Pl. Opp. at 17.) Plaintiff also shifts the burden to Defendants, contending that they would have identified specific contract provisions and added them to the Amended Complaint, if only Defendant had provided them with that information. (*Id.* ("It would be unjust to require Plaintiff to cite to specific provisions.").

Of course, the parties have already informally exchanged documents among themselves, and have apparently failed to locate the requisite plans and provisions. (*See* ECF No. 41-3 ¶¶ 3–11.) Notwithstanding, Plaintiff has not alleged sufficient facts to state a claim for breach of contract. Indeed, "it is not enough for Plaintiff to generally allege that Defendants breached a contract by failing to pay for services pursuant to some currently unidentified agreement with some currently unidentified claimants." *Abira Med. Lab'ys. v. Metro Risk Mgmt.*, No. 23-20391, 2024 WL 3580759, at *4 (D.N.J. July 29, 2024). Under New Jersey law, "a complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached." *Eprotec Pres., Inc. v. Engineered Materials, Inc.*, No. 10-5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011) (citing *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)). Throughout its Amended Complaint, Plaintiff passingly references "binding insurance contracts," (*see, e.g.*, Am. Compl. ¶¶ 37, 52), or "the Benefits clause or provision" of these insurance contracts, (*see, e.g.*, *id.* ¶ 66). These allegations, taken together, are insufficient to state

a claim for breach of contract because they fail to substantiate the existence of any agreement, let alone "point to any provision of the contract specifically." *See Skypala v. Mortg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 460 (D.N.J. 2009) (quotation omitted); *see also Coda v. Constellation Energy Plus Holdings, LLC*, 409 F. Supp. 3d 296, 303 (D.N.J. 2019) ("The plaintiff must . . . specifically identify portions of the contract that were allegedly breached." (quotation omitted)); *Raichi v. Prometheus Grp.*, No. 16-2749, 2016 WL 6246766, at *3 (D.N.J. Oct. 25, 2016) ("Although the Complaint does reference an 'Agreement' between the parties . . . , it does *not* provide any specific details as to when the parties entered a contract, what the terms of the contract were, or how Defendants' actions might have violated those terms . . . . Without more, Plaintiff's Complaint has not plausibly stated a claim for breach of contract.").

Recently, another court in this district denied a defendant's motion to dismiss Abira's breach of contract claims, even though Abira had not attached any agreement to the operative complaint. *Abira Med. Lab'ys, LLC v. Highmark W. & Ne. N.Y., Inc.*, No. 24-1888, 2025 WL 278633, at *2–4 (D.N.J. Jan. 23, 2025) ("Plaintiff's allegations, accepting them as true, regarding the contractual obligations between the parties via the assignments of benefits together with the specific list of insureds/claimants that is attached as an exhibit to the FAC sufficiently put [d]efendant on notice of the grounds for [p]laintiff's breach of contract claim." ). The *Highmark* case is instructive but distinguishable. In that case, Abira alleged that it submitted "requisitions for laboratory services," that "created contractual obligations on the part of the Defendant." *Id.* at *1. Abira further alleged that the requisition documents "contained assignments of benefits" provisions. *Id.*[7] Abira attached a "partially redacted" "requisition executed by Defendant's

---

[7] The allegations in *Highmark* mirror the allegations in *Abira Med. Laby's, LLC v. Kaiser Foundation Health Plan*, an out-of-district case that also denied the defendant's motion to dismiss breach of contract claims. *See* No. 24-759, 2024 WL 2188911, at *2 (E.D. Pa. May 15, 2024). Plaintiff relies heavily on this case in the present motion, but the case is not applicable for the same reasons described herein.

11

insured," including an assignment of benefits. *Id.* These allegations and exhibits, taken together, sufficiently alleged that a contractual relationship existed between Plaintiff and the defendant. *Id.* at *3. In the present case, Plaintiff has not alleged the existence of any contractual document between Plaintiff and Defendants. Instead, Plaintiff merely alleges that an unspecified "insurance contract[]" existed "between the insurance companies and the insureds/claimants," not between Plaintiff and Defendants. (Am. Compl. ¶ 37.) Furthermore, Plaintiff does not allege the existence of any assignment provision; only that the insureds/claimants "designated Abira as an assignee of the insurance contracts, *as evidenced by* providing their insurance information to Abira." (*Id.* ¶ 39 (emphasis added).) Plaintiff's failure to allege any contract and any contractual provision—even without quoting that provision—takes Abira's present case outside the ambit of *Highmark* and similar cases.

For the first time in its brief in opposition, Plaintiff argues that there was an "implied contract" where "the parties show[ed] their agreement by conduct." (Pl. Opp. at 19.) To support this contention, Plaintiff asserts that an implied contract was "inferred from the parties' conduct" or from the surrounding circumstances, and that it had a "reasonable expectation" that "Defendants would have compensated Plaintiffs in light of services rendered." (*Id.*) This argument does not salvage Plaintiff's breach of contract claim, because Plaintiff has not alleged that there was *any* relationship between the parties, let alone the kind of cognizable implied contractual relationship where "an out-of-network provider and an insurer regularly dealt with each other, and the provider would obtain preauthorization." *See MedWell, LLC v. Cigna Corp.*, No. 20-10627, 2021 WL 2010582, at *3 (D.N.J. May 19, 2021). In *MedWell*, the court found that an implied contract existed because the parties had a "regular billing relationship," and "pattern of preauthorization." *Id.* No such relationship is alleged here; Plaintiff alleges that Defendant never paid even a single claim,

and does not allege the existence of any preauthorization. Accordingly, Plaintiff fails to allege the existence of an implied contract, and the Court dismisses Count 1 of the Amended Complaint.

Having determined that Plaintiff has not sufficiently alleged the existence of a contract—whether express or implied—the Court is bound to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. This covenant is a "component of every contract" with requires "adherence to community standards of decency, fairness or reasonableness." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007) (cleaned up). Inherent in the covenant, however, is the existence of a contract; without a contract, there is no covenant. *See Kenny v. Onward Search*, No. 15-0456, 2015 WL 1799593, at *4 (D.N.J. 2015) ("Without sufficiently alleging the existence of a contract, Plaintiff cannot sufficiently allege the breach of the implied covenant of good faith and fair dealing."). Since the Court has already determined Plaintiff's failure to allege the existence of a contract, the Court dismisses Count 2 of the Amended Complaint.

### 2. Quantum Meruit and Unjust Enrichment (Count 7)

Plaintiff's claim for quantum meruit and unjust enrichment fails because Plaintiff has not alleged that any benefit was conferred upon the Defendants. Unjust enrichment requires that the defendant "received a benefit and that retention of that benefit without payment would be unjust." *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016). Quantum meruit requires: (1) the performance of services in good faith, (2) the acceptance of the services by the person who whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Starkey, Kelly, Blaney & White v. Est. of Nicolaysen*, 796 A.2d 238, 242–43 (N.J. 2002). Indeed, "both quantum meruit and unjust enrichment 'require[] a determination that defendant has

benefitted from plaintiff's performance.'" *Abira Med. Lab'ys., LLC*, 2024 WL 3580759, at *6 (quoting *MJA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 361 (D.N.J. 2021)).

Plaintiff alleges that Defendants received a benefit when they "retaine[d] the money" and "intentionally and wrongfully failed to pay for lab tests, on behalf of the insureds/claimants." (Am. Compl. ¶ 104.) Relying on a series of cases from this district, Defendants argue that, as a matter of law, insurance companies do not derive any benefit from medical services provided to their insureds, and therefore a quantum meruit or unjust enrichment claim against an insurer must fail. (*See* Def. Mot. at 30); *see also Plastic Surgery Ctr., LLC v. Oxford Health, Ins., Inc.*, No. 18-2608, 2019 WL 4750010, at *5 (D.N.J. Sept. 30, 2019); *Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, No. 17-2055, 2019 WL 1916205, at *8 (D.N.J. Apr. 30, 2019); *Comprehensive Spine Care, P.A. v. Oxford Health, Ins., Inc.*, No. 18-10036, 2018 WL 6445593, at *6 (D.N.J. Dec. 10, 2018). Each of the cases cited, which were decided in 2018 and 2019, predate the Third Circuit's 2020 decision in *Plastic Surgery Center, P.A. v. Aetna Life Insurance Company*, which held that a healthcare provider could recover against an insurer in a quantum meruit or unjust enrichment action, but only because the benefit conferred arises "specifically from plan provisions." 967 F.3d 218, 241 (3d Cir. 2020).

Plaintiff, on the other hand, reads *Plastic Surgery* too broadly, arguing that the case establishes that any time an insurer fails to pay a healthcare provider for services rendered to the insured, there is a "benefit conferred" sufficient to establish an unjust enrichment claim. (Pl. Opp. at 26 (citing *Plastic Surgery Ctr.*, 967 F.3d at 240–41.)[8] The thrust of *Plastic Surgery* is not that any and all claims for quantum meruit or unjust enrichment can be asserted against an insurer, but

---

[8] Defendants argue that *Plastic Surgery* does not support Plaintiff's contention because the Third Circuit upheld the dismissal of the unjust enrichment claim at issue. (Pl. Rep. at 12.) However, the claim's dismissal was based on ERISA preemption, not failure to state a claim. *See Plastic Surgery Ctr.*, 967 F.3d at 242 (finding that the district court "properly dismissed the unjust enrichment claims as preempted").

that the provider, like Abira in this case, "must plausibly establish that a plan exists, [that] the insurer '"received a benefit"—*i.e.*, the discharge of its duties under that plan,' and that 'retention of that benefit without payment would be unjust.'" *Abira Med. Lab'ys.*, 2024 WL 3580759, at *6 (quoting *Plastic Surgery Ctr.*, 967 F.3d at 241).

Here, Plaintiff's allegations that Defendants retained collected premium payments do not meet any of the criteria set forth in *Plastic Surgery*; there are no allegations that plausibly establish that a plan exists, or that the insurer discharged any duty at all, or that the discharge of that duty without payment would be unjust. *See Abira Med. Lab'ys.*, 2024 WL 3580759, at *6. The allegation of an unspecified "insurance contract" is insufficient. Therefore, while a provider could theoretically state a claim for quantum meruit or unjust enrichment, Abira has not done so here.

Accordingly, the Court dismisses Count 7 of the Amended Complaint.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 41) is **GRANTED** and Plaintiff's Amended Complaint (ECF No. 8) is **DISMISSED WITHOUT PREJUDICE.** Plaintiff may file an amended pleading within thirty (30) days, consistent with his Opinion. Failure to file the amended pleading in the allotted time will result in a dismissal with prejudice. An appropriate Order will accompany this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: March 27, 2025